IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JAN K. VODA, M.D.,                      )
                                        )
        Plaintiff and Counterclaim      )
        Defendant,                      )
                                        )
v.                                      )        No. CIV-03-1512-L
                                        )
CORDIS CORPORATION,                     )
                                        )
        Defendant and Counterclaim      )
        Plaintiff.                      )

# **O R D E R**

This action concerns three patents that were issued by the United States

Patent and Trademark Office to plaintiff, Dr. Jan K. Voda.  All of the patents concern

an angioplasty guide catheter.  Patent No. 5,445,625 ("the '625 patent") reflects the

catheter "in a relaxed state prior to insertion in the cardiovascular system."  The two

remaining patents (the '213 and the '195 patents) cover plaintiff's inventive technique

for using the catheter to perform angioplasty.  In addition to method claims, the '195

patent also includes claims that focus on the catheter as it appears in the aorta.

Plaintiff filed this action on October 30, 2003, seeking damages for alleged

infringement of the three patents by defendant, Cordis Corporation.  Beginning May

15, 2006, the case was tried to a jury, which returned a verdict in favor of plaintiff on

May 25, 2006.  The jury specifically held defendant infringed each of the patents in

suit and that claims 1, 2, and 3 of the '213 patent were not invalid due to anticipation

or obviousness.[1]  Verdict Form at 1-7 (Doc. No. 337).  The jury determined that plaintiff was entitled to a reasonable royalty of 7.5% of defendant's gross sales of the infringing catheters.  Id. at 8.  In addition, the jury found defendant's infringement was willful.  Id. at 3.

Thereafter the parties submitted briefs on the issues of prejudgment interest, enhanced damages, injunctive relief, and attorney's fees.  On September 5, 2006, the court issued an order granting plaintiff prejudgment interest, enhanced damages, and attorney's fees.  The court, however, denied plaintiff's request for injunctive relief.  The court entered its judgment that same date.  Thereafter, defendant timely renewed its motion for judgment as a matter of law on the following grounds:

> (1) Cordis' XB catheters do not infringe the "straight" or "substantially straight" claims under the doctrine of equivalents, (2) there is no infringement of the 213 claims when the proper claim construction is applied, (3) Cordis did not willfully infringe, (4) the 213 patent is invalid, (5) laches bars pre-complaint damages, and (6) lack of marking bars recovery of any damages for infringement of the 213 patent before March 2002.

Cordis' Motion for Judgment as a Matter of Law and Supporting Brief at 1 [hereinafter cited as "Cordis' JMOL Motion"].  In the alternative, defendant seeks a new trial because the court's claim construction of "along a line" was improper, the court committed evidentiary errors, and the jury's verdict is against the weight of the

---

[1]At the conclusion of the trial, defendant conceded it was no longer seeking a declaration as to the validity of the '625 patent, the '195 patent, or claims 4 and 5 of the '213 patent.  The court thus granted judgment as a matter of law in favor of plaintiff on that portion of defendant's counterclaim.

evidence.  Plaintiff opposes defendant's motions, but also seeks relief pursuant to

Fed. R. Civ. P. 60(b), asking the court to reconsider its decision regarding enhanced

damages.  In addition, plaintiff asks the court to sanction defendant because it failed

to produce information regarding allegedly infringing catheters[2] during discovery.

Rule 50 provides in pertinent part that:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment — and may alternatively request a new trial or join a motion for a new trial under Rule 59.  In ruling on a renewed motion, the court may:
>
> (1) if a verdict was returned:
> >   (A)   allow the judgment to stand,
> >   (B)   order a new trial, or
> >   (C)   direct entry of judgment as a matter of law[.]

Fed. R. Civ. P. 50(b).[3]  In ruling on defendant's renewed motion, the court must view

the evidence in the light most favorable to plaintiff to determine whether there is

---

[2]The catheters in question are special order modified XB catheters and ten designs referred to as VL-code catheters.  According to defendant, "[t]he VL codes were all designed by one physician at Buffalo General Hospital in 1999, based on the shape of a Voda Left catheter."  Motion to Substitute Attachment to Cordis' Quarterly Sales Report for the Period May 16-August 31, 2006 at 2 (Doc. No. 408) [hereinafter cited as Motion to Substitute].

[3]As defendant's motion was filed on September 19, 2006, the court has quoted the Rule as it existed on that date.  Other than deleting the requirement that motions be made "at the close of all the evidence", the December 1, 2006 amendments to Rule 50(b) do not alter the substance of the Rule.

evidence upon which the jury could have properly returned a verdict in his favor. Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir.), *cert. denied*, 519 U.S. 928 (1996).[4]  The court does not weigh the evidence, determine the credibility of the witnesses, or substitute its conclusions for that of the jury. Judgment as matter of law is only proper when "viewed in the light most favorable to the nonmoving party, the evidence and all reasonable inferences to be drawn therefrom point but one way, in favor of the moving party."  Mitchell v. Mobil Oil Corp., 896 F.2d 463, 467 (10th Cir.), *cert. denied*, 498 U.S. 898 (1990).  Indeed, the court may overrule the jury's decision "[o]nly if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for the issue against that party'".  Sims v. Great American Life Ins. Co., 469 F.3d 870, 891 (10th Cir. 2006).

In contrast to the narrow standard governing renewed motions for judgment as a matter of law, the trial court's authority to grant a new trial "is large."  Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996).  Rule 59 provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the

---

[4]As renewed motions for judgment as a matter of law and motions for new trial are not unique to patent cases, the Federal Circuit applies the standards enunciated by the regional circuit in which the district court sits.  The issues raised by the current motions are thus governed by Tenth Circuit case law.  *See* Primos, Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 847 (Fed. Cir. 2006); Old Town Canoe Co. v. Confluence Holdings Corp., 448 F.3d 1309, 1314 (Fed. Cir. 2006).

United States . . . ."  Fed. R. Civ. P. 59(a).  The trial court has great discretion in

deciding whether to grant such a motion.

> "[I]f it should clearly appear that the jury have committed
> a gross error, or have acted from improper motives, or
> have given damages excessive in relation to the person or
> the injury, it is as much the duty of the court to interfere, to
> prevent the wrong, as in any other case."  "The trial judge
> in the federal system," we have reaffirmed, "has . . .
> discretion to grant a new trial if the verdict appears to [the
> judge] to be against the weight of the evidence."

Gasperini, 518 U.S. at 433 (parentheses and citations omitted).  It is, in fact, an

abuse of discretion to deny a motion for new trial "when 'the verdict is clearly,

decidedly or overwhelmingly against the weight of the evidence.'" Hampton v. Dillard

Dep't Stores, Inc., 247 F.3d 1091, 1110 (10th Cir. 2001), cert. denied, 122 S. Ct.

1071 (2002) (quoting Black v. Hieb's Enters., Inc., 805 F.2d 360, 363 (10th Cir.

1986)).

Under Tenth Circuit law, the trial court's discretion to grant a Rule 60(b)

motion is circumscribed as "[r]elief under Rule 60(b) is extraordinary and may only

be granted in exceptional circumstances." Bud Brooks Trucking, Inc. v. Bill Hodges

Trucking Co., 909 F.2d 1437, 1440 (10th Cir. 1990).  The Court has cautioned that

such relief is appropriate only "when circumstances are so 'unusual or compelling'

that extraordinary relief is warranted, or when it 'offends justice' to deny such relief."

Casner v. Freedom Stores, Inc., 98 F.3d 572, 580 (10th Cir. 1996) (citation omitted).

Nonetheless, "a litigant demonstrates exceptional circumstances by satisfying at

least one of Rule 60(b)'s six grounds for relief."  <u>Allender v. Raytheon Aircraft Co.</u>,

439 F.3d 1236, 1242 (10th Cir. 2006).

I.    <u>Renewed Motion for Judgment as a Matter of Law</u>

    A.    <u>Infringement Under the Doctrine of Equivalents</u>[5]

Defendant contends there was insufficient evidence for the jury to find that the

XB series catheters infringe under the doctrine of equivalents because the XB series

catheters lack an equivalent of the "straight" or "substantially straight" segment of the

patents-in-suit.  At trial, the parties presented substantial evidence on this issue,

including defendant's assertion that "[t]his is a classic missing elements case."

Cordis' JMOL Motion at 5.  The jury was then instructed:

> Under the doctrine of equivalents, the product or method
> can infringe an asserted patent claim if it includes parts
> that are identical or equivalent to the limitations recited in
> the claim.  If the product or method is missing an identical
> or equivalent part to even one limitation recited in the
> asserted patent claim, the product or method cannot
> infringe the claim under the doctrine of equivalents.  With
> the exception of dependent claims, you must consider
> each of the patent claims separately.
>
>            * * *
>
> A claim limitation is present in an accused product or
> process under the doctrine of equivalents if the differences
> between the claim limitation and a comparable element of
> the accused product or process are insubstantial.  One

---

[5]Plaintiff's assertion that defendant failed to renew its motion for judgment as a matter of law on this issue at the close of the evidence is belied by the record.  <i>See</i> Transcript of Jury Trial at 1386.  Regardless, the current version of Rule 50(b) deletes the requirement that a party can only renew a motion that was made at the close of the evidence.  The court would thus be disinclined to deny defendant's motion based on a technicality that the Federal Rules of Civil Procedure now declares to be anachronistic.

way to determine this is to look at whether or not the comparable element of the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element.

Another way to determine whether the differences are insubstantial is to consider whether or not people of ordinary skill in the field of the invention would have known that the structure or step of the accused product or process and the structure or step recited in the patent claim limitation are interchangeable.  The knowledge of such a person must be based on what was known at the time of the activities which constitute the alleged infringement, and not what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims.  Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be considered equivalent for the purposes of the doctrine of equivalents.

Court's Instructions to the Jury at 20-22 (Doc. No. 335).  Based on the evidence presented and the court's instructions, the jury found in favor of plaintiff on the issue of infringement.  In its renewed motion, defendant has presented nothing that demonstrates a lack of a legally sufficient evidentiary basis for the jury's verdict.

Nor can defendant establish its entitlement to judgment based on prosecution history estoppel.[6]  As the court explained in its summary judgment ruling, the amendment to claims 1 and 4 of the '213 patent related to the length of the engagement with the aortic wall ("along a line having a length of about 1.5 cm or

---

[6]Although it is not clear from defendant's motion, this argument applies only to the '213 patent.

greater") and the location of that engagement ("opposite the distal end of the catheter when the distal end of the catheter is positioned in the ostium").  Order at 15 (W.D. Okla. May 8, 2006) (Doc. No. 309).  The court reaffirms its conclusion that prosecution history estoppel is not applicable to the '213 patent.

Finally, the court rejects defendant's assertion that plaintiff did not carry his burden of establishing that the difference between the claim limitations and the corresponding elements in the accused catheters was insubstantial.  Plaintiff presented significant evidence regarding the equivalent nature of the accused devices when compared to the claim limitations.  Dr. Steven L. Almany, Dr. Jan K. Voda, and Jack C. Griffis all testified at length that the XB series catheters embodied an equivalent element to the straight or substantially straight leg limitations.[7]  That defendant presented contrary evidence does not entitle it to judgment as a matter of law as that evidence is not so overwhelming that it points but one way.

B.    Claim Construction Argument

Defendant contends the court's construction of the claim term "along a line" is erroneous.  Patent claims define in words the scope of the invention at issue. Construction of the claims is a matter of law for the court.  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1996) (en banc).

---

[7]Moreover, defendant's argument ignores the rule that equivalency can be found even when separate claim limitations are combined into a single component of the infringing device. See Gaus v. Conair Corp., 363 F.3d 1284, 1291 (Fed. Cir.), cert denied, 543 U.S. 927 (2004).

> In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to "particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention."  35 U.S.C. § 112, ¶ 2.

Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001).  Likewise, the court must be guided by the principle that there is a "heavy presumption" that words used in the claims are "'given their ordinary and customary meaning,'" that is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc), cert. denied, 126 S. Ct. 1332 (2006) (citation omitted).  See also Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002) (collecting cases), cert. denied, 538 U.S. 1058 (2003).  Once the court has determined the ordinary meaning of the disputed terms, the court must examine the written description and prosecution history of the patent to ascertain whether the inventor specifically defined or used any of the terms in a way that is inconsistent with the ordinary or customary meaning.  Likewise, if the court cannot fathom the meaning of the words, the specifications and prosecution history must be examined to determine the scope of the claims.  The Federal Circuit has cautioned, however, that "[t]he written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of claims."

Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*), *aff'd* 517 U.S. 370 (1996).

With these principles in mind, the court construed "along a line" to mean "[c]ontacting the aorta inner wall with a portion of the tube body such that when the end of the catheter lodges within the opening in the coronary artery, an about 1.5 cm or greater length of the tube body bears upon the wall of the aorta opposite the opening." Order at 2 (W.D. Okla. Sept. 15, 2005) (Doc. No. 153).  Defendant argues this construction is in error because it does not require "contiguous contact between the aorta inner wall and a *straight* section of the catheter".  Cordis' JMOL Motion at 7 (emphasis added).

The court once again rejects defendant's proposed construction.  The phrase "along a line" was added to Claim 4 of the '213 patent by amendment.  Order at 14 (W.D. Okla. May 8, 2006) (Doc. No. 309).  Specifically, Claim 4 was amended to describe the shape of the profiled portion and to reflect that the profiled portion engaged the wall of the aorta "along a line."  Id.  The purpose of the amendment was to distinguish prior art catheters by indicating the length and location of the engagement of the aortic wall.  Id. at 15.  Defendant's construction asks the court to incorporate a term into the claim that does not exist – that is, that the engagement is solely along a *straight* portion of catheter.   In addition to violating claim

construction rules,[8] defendant's construction fails to recognize that the '213 patent focuses on the catheter as it is used in the human body.  The claim requires the catheter body to engage the aortic wall, which by its very nature is not straight.  A person of ordinary skill in the art would understand the complex geometry of the aorta and would not expect engagement along a line to indicate a straight line.  *See* Primos, Inc., 451 F.3d at 847-48.  Moreover, defendant's construction would render disclosed preferred embodiments outside the scope of the claim.[9]  While claim construction should not import limitations from preferred embodiments into the claim, interpretations that exclude a preferred embodiment are also not appropriate. Primos, Inc., 451 F.3d at 848; Burke, Inc. v. Bruno Indep. Living Aids, Inc., 183 F.3d 1334, 1341 (Fed. Cir. 1999).

---

[8]*See* SuperGuide Corp. v. DirecTV Enterps., Inc., 358 F.3d 870, 878 (Fed. Cir. 2004) (error to limit claim to analog signals as "neither 'analog' nor 'digital' appears in any of the asserted claims").

[9]The '213 patent teaches "the second straight portion 124 and the proximal portion of the secondary *curved* portion 130 of the distal end portion together provide a contact portion for resting substantially contiguously against the wall of the ascending aorta 158."  PX 2 at 23:51-55 (emphasis added).  Likewise, the patent reflects, "to the extent that an aorta varies in size/shape, the secondary *curved* portion 130 readily accommodates this change so that the contact portion (including the second straight portion 124 and the proximal portion 131 of the secondary *curved* portion 130) remains in contact with the ascending aortic wall in a substantially contiguous manner." Id. at 23:67 - 24:6 (emphasis added).  *See also* id. at 19:52-57 ("in this preferred orientation shown in FIG. 8C, a distal end 135 of the contact portion (*the contact portion including the second straight portion 124 and a proximal portion 131 of the secondary curved portion 130*) rests against the wall of the ascending aorta 158 at a point substantially directly across from the ostium 157 of the left main coronary artery 154. . . .  Moreover, this advantageous orientation of the guide catheter 110 within the aortic complex is directly attributable to the shape and configuration (including a particular sequence of straight and curved portions) of the guide catheter 110 in its relaxed state prior to insertion in the cardiovascular system.") (emphasis added).

Given the court's reaffirmation of its claim construction, defendant's arguments based on its rejected claim construction fail. Defendant is not entitled to judgment as a matter of law on this basis.

C. <u>Willful Infringement</u>

Likewise, the court rejects defendant's assertion that there was no substantial evidence of willful infringement. As the court noted in its ruling on plaintiff's request for enhanced damages:

> plaintiff presented evidence that defendant consciously copied his design and ideas. Although defendant vigorously disputed this notion, a finding of conscious copying is inherent in the jury's finding of willfulness. At trial the jury was specifically instructed:
>
>> Other factors you may consider in determining wilfulness are whether, in designing the product accused of infringement, Cordis copies the disclosures of Dr. Voda's patents, or whether Cordis instead tried to "design around" the patents by designing a product that Cordis believed did not infringe the patent claims. Evidence of copying a patent is evidence of willful infringement. On the other hand, evidence that Cordis attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that the infringement was not willful.
>
> Court's Instructions to the Jury at 47 (Doc. No. 335). Also implicit in this finding is a rejection of defendant's argument that it attempted to design around plaintiff's claims. . . . Likewise, in making its willfulness finding, the jury rejected defendant's advice of counsel defense. At trial, defendant presented evidence that it sought and

12

obtained opinion letters from both in-house and outside counsel with respect to the patents-in-suit.   Plaintiff countered this evidence by questioning the timing of the requests, the thoroughness of the information defendant provided to counsel, and the independence of counsel. The jury was then instructed:

> In evaluating Cordis' reliance on the advice of a lawyer, you should consider when Cordis obtained the advice, the quality of the information Cordis provided to the lawyer, the competence of the lawyer's opinion, and whether Cordis relied upon the advice. Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity, enforceability and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

> Id.  Defendant's lengthy post-trial argument that it did in fact rely on competent legal advice is misplaced, as it asks the court to reweigh an issue decided by the jury.  The court, however, does not have discretion to do so at this time; it may not disregard the jury's willfulness finding and the findings implicit therein.  See Jurgens [v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996)].

Order at 5-7 (W.D. Okla. Sept. 5, 2006) (Doc. No. 389).  Based on the totality of the circumstances, the court finds defendant has not met its heavy burden of establishing that "no reasonable juror could find the asserted proof of willfulness rose to the quantum of clear and convincing evidence."  Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998).  Judgment as a matter of law on this basis is therefore not warranted.

13

D.   Validity of Claims 1-3 of the '213 Patent

Defendant argues it presented clear and convincing evidence of invalidity of claims 1-3 of the '213 patent.  Specifically, it asserts that its evidence "showing engagement of Bourassa and Amplatz catheters for more than 1.5 cm was essentially unrebutted."  Cordis JMOL Motion at 17.  Defendant's evidence, however, was not unrebutted.  Furthermore,

> [i]n reviewing the sufficiency of the evidence to support the jury's verdict, we may inquire only whether the findings necessary to the jury's verdict are supported by the evidence, and we must conduct that inquiry in light of [defendant's] burden to overcome the presumption of validity.  "Where, as here, there is a verdict of validity, the question is . . . whether the challenger's evidence so met the burden [of establishing invalidity by clear and convincing evidence] that reasonable jurors could not have concluded that the challenger failed to overcome that burden."  Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893 (Fed. Cir. 1984).

L & W, Inc. v. Shertech, Inc., 471 F.3d 1311, 1320 (Fed. Cir. 2006).  The court finds defendant cannot sustain its burden.

While defendant's expert engineer, Thomas Trotta, testified that the 1969 Bourassa article disclosed every element of the '213 patent, Dr. Voda testified that Fig. 2(B) of that article is far from clear and does not clearly reflect engagement with the aortic wall opposite the ostium.  Furthermore, defendant's infringement expert, Dr. Frank Hildner, admitted he could not represent the accuracy of the calculations

14

upon which Mr. Trotta's testimony was based.[10]  Transcript of Jury Trial at 1195-96. The jury, which was properly instructed as to both anticipation and obviousness, determined the 1969 Bourassa article did not establish invalidity of claims 1-3 of the '213 patent.

Likewise, the jury found the Amplatz references did not anticipate the claims at issue.  In support of its assertion that there was no substantial evidence to support this finding, defendant points again to Mr. Trotta's testimony, including his demonstration using a replica model of an aorta.   Mr. Trotta, however, is a catheter engineer, not an interventional cardiologist.  As the court instructed the jury, he "has no education or training in the proper use of guiding catheters in the human body and has never used a guiding catheter in a human."  Transcript of Jury Trial at 1093. As noted earlier, the '213 patent focuses on use of the catheter in the human body; it teaches plaintiff's inventive technique for using the catheter to perform angioplasty. In addition to not constituting evidence,[11] Mr. Trotta's demonstration is deficient in that respect.  Moreover, plaintiff's criticism of Mr. Trotta's demonstration, id. at 1351-53, is consistent with Dr. Hildner's opinion that aortic models "can only go a limited way in being able to reproduce what a physician would feel in an actual situation."

---

[10]Dr. Hildner also indicated that, based on Fig. 2(B), "we can't tell for sure exactly where the tip [of the catheter] is, but we presume that it is in the coronary ostium."  Transcript of Jury Trial at 1179.

[11]The court specifically instructed the jury "Mr. Trotta's demonstration is not evidence, but is simply for demonstrative purposes, that is to visually demonstrate his testimony."  Transcript of Jury Trial at 1093-94.

Exhibit PX 433 to the Appendix (1) Plaintiff's Opposition to Cordis' Motion for New

Trial (2) Plaintiff's Opposition to Cordis' Renewed Motion for Judgment as Matter of

Law at 27.  Defendant has failed to establish that its evidence so met the burden of

establishing invalidity by clear and convincing evidence that reasonable jurors could

only have concluded that claims 1-3 of the '213 patent were invalid.

E.    Damages

Finally, defendant seeks judgment as a matter of law on two issues relating

to damages.  First, defendant reasserts its position that laches bars plaintiff from

recovering pre-complaint damages.  Second, it argues there is no substantial

evidence to support a damages period beginning July 4, 2000 for the '213 patent.

Defendant's laches argument was addressed by the court in its ruling on the

original motion for judgment as a matter of law.  Order at 3-5 (W.D. Okla. June 8,

2006) (Doc. No. 339).  Defendant has presented no new argument or evidentiary

basis to sustain its burden on this affirmative defense.[12]  Furthermore, its assertion

in the renewed motion that laches should be presumed for the '213 and '195 patents

is contrary to law.  Under patent law, a rebuttable presumption of laches arises if

there is more than a six-year delay in filing suit; the period of delay, however, does

not begin to run until the patent issues.  A.C. Aukerman Co. v. R.L. Chaides Constr.

_____

[12]Defendant's claim that there was no evidence of its copying plaintiff's design has been
overtaken by subsequent disclosures.  *See infra* at **INSERT PAGES**.  Moreover, the fact that
defendant has indicated its intent to continue to produce and market the XB series catheters even
after the jury's verdict belies its assertion that it would have altered its conduct had plaintiff only filed
suit earlier.  *See* Meyers v. Brooks Shoe Inc., 912 F.2d 1459, 1463 (Fed. Cir. 1990), *overruled on
other grounds by* A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020 (Fed. Cir. 1992).

Co., 960 F.2d 1020, 1032, 1035 (Fed. Cir. 1992) (*en banc*).  The '213 and '195

patents both issued less than six years prior to the filing of this action.

Likewise, the court rejects defendant's renewed marking argument.  The '213

patent contains only method claims; thus, the notice provisions of 35 U.S.C. § 287

do not apply.  Defendant's citation of Am. Med. Sys. Inc. v. Med. Eng'g Corp., 6 F.3d

1523, 1538 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994), is inapposite

> because here an asserted patent . . . contains only
> method claims, and we look to the asserted patents
> independently.  We have not previously held that a patent
> containing only method claims is examined to see if
> something could have been marked in order to assess
> whether the notice provision applies, and we decline to do
> so now.  *Cf.* Hanson v. Alpine Valley Ski Area, Inc., 718
> F.3d 1075, 1083 (Fed. Cir. 1983) (upholding decision that
> section 287 did not apply when only process claims were
> found infringed and the patent contained apparatus
> claims).

State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1074 (Fed.

Cir. 2003).

* * *

For the reasons set forth above, Cordis' Motion for Judgment as a Matter of

Law (Doc. No. 401) is therefore DENIED.

II.    Motion for New Trial

     A.    Improper Claim Construction

For the reasons set forth in I.B, *supra*, the court denies defendant's motion for a new trial on this basis.

     B.    Evidentiary Rulings

Defendant argues it is entitled to a new trial because the court erred in admitting and restricting the testimony of various witnesses.  Specifically, defendant claims the court erred in permitting Dr. Voda to present expert testimony, while precluding Cordis' from presenting – in whole or in part – the testimony of Dr. Martial Bourassa, Mr. Trotta, and Dr. Hildner.  Whether to admit or to exclude evidence is committed to the trial court's sound discretion.  Nalder v. West Park Hosp., 254 F.3d 1168, 1173 (10th Cir. 2001); Kearns v. Chrysler Corp., 32 F.3d 1541, 1547 (Fed. Cir. 1994), *cert. denied*, 514 U.S. 1032 (1995).

Defendant's challenge to Dr. Voda's expert testimony is based on his failure to provide an expert report.[13]  Rule 26(a)(2), which governs disclosure of expert testimony, requires the submission of an expert report from any "witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony".  Fed. R. Civ. P. 26(a)(2)(B).  Dr. Voda was neither retained, nor specially employed to provide expert testimony; thus, under the plain language of the rule, he was not

---

[13]Defendant does not dispute that plaintiff timely identified Dr. Voda as an expert witness.

subject to the report requirement.  *See* <u>Bank of China v. NBM LLC</u>, 359 F.3d 171, 182 n.13 (2d Cir. 2004), *cert. dismissed*, 126 S. Ct. 675 (2005).  If the drafters of Rule 26 had intended that all expert witnesses provide reports, they could have written the rule accordingly.  As no expert report was required, the court did not err in permitting Dr. Voda's expert testimony.

Nor did the court err in precluding the testimony of Dr. Bourassa.  Cordis continues to argue that it timely disclosed its intent to call Dr. Bourassa because it notified plaintiff of its intent six weeks before trial.  This argument is without merit.  As early as November 2004, defendant had identified Dr. Bourassa's 1969 article as potentially invalidating prior art.  Cordis' Motion for a New Trial and Supporting Brief at 12.  Fact discovery closed in this case on December 30, 2004, 15 months prior to the date defendant disclosed its intent to call Dr. Bourassa as a witness.[14]  By the time defendant identified Dr. Bourassa, the parties were in full trial-preparation mode.  To require plaintiff to discontinue trial preparation in order to depose a witness who should have been disclosed months earlier would have been unduly prejudicial to plaintiff.[15]  *See* <u>Primos, Inc.</u>, 451 F.3d at 851.

---

[14]In response to defendant's motion for a new trial, plaintiff argues defendant planned to use Dr. Bourassa as an expert witness.  If that were the case, of course, the court would not have permitted his testimony as Dr. Bourassa did not submit an expert report.

[15]Defendant's contention that plaintiff should not have been surprised by its decision to call Dr. Bourassa is contradicted by its assertion that "[a]n author's testimony is generally neither sought nor required in patent cases."  Cordis' Motion for a New Trial and Supporting Brief at 16.  Indeed, plaintiff agrees that "Dr. Bourassa' understanding of what he meant to convey in the article . . . is irrelevant to what the article actually teaches and, thus, to the issues in dispute."  Plaintiff's Opposition to Cordis' Motion for a New Trial at 15.

Finally, the court did not err in limiting the testimony presented by Mr. Trotta and Dr. Hildner.  As the court noted in its *Daubert* ruling, while Mr. Trotta is a well-qualified engineer, he is not qualified to issue opinions regarding the method of using guiding catheters in the human body.  Order at 6 (W.D. Okla. May 1, 2006) (Doc. No. 278).  He was thus not qualified to issue invalidity opinions regarding the method claims of the patents-in-suit.  The court is puzzled by defendant's contention that "although [Mr. Trotta was] allowed to testify regarding his use of his demonstrative Amplatz and Bourassa replicas catheter . . . the Court issued a limiting instruction to the jury that this was not evidence."  Cordis' Motion for a New Trial and Supporting Brief at 22.  Prior to trial, defendant argued Mr. Trotta's replicas were merely demonstrative trial exhibits[16] and it did not object when the court gave its limiting instruction.  With respect to Dr. Hildner, the court merely limited his testimony to the opinions disclosed in his expert report.  This was not error.  *See* Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir.), *cert. denied*, 537 U.S. 1066 (2002).

C.   Sufficiency of the Evidence

For the reasons set forth in ruling on defendant's renewed motion for judgment as a matter of law, the court finds defendant is not entitled to a new trial on the ground that the jury's verdict is against the weight of the evidence.  Defendant has failed to establish that "'the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence.'"  Hampton, 247 F.3d at 1110.

---

[16]Cordis' Opposition to Plaintiff's Motion to Strike at 10 (Doc. No. 203).

* * *

Cordis' Motion for a New Trial (Doc. No. 400) is thus DENIED.


III.    Plaintiff's Motion for Relief from Judgment

On September 15, 2006, defendant filed its quarterly sales report for the period May 16, 2006 through August 31, 2006.[17]   The document revealed the existence of two lines of special order catheters manufactured by defendant, but previously undisclosed to plaintiff:  the modified XB catheters and the VL-code catheters, the latter of which are undisputably "based on the shape of a Voda Left catheter."  Motion to Substitute at 1.  Based on this revelation, plaintiff filed a motion asking the court to amend the judgment.  He seeks increased  damages and pre-judgment interest to reflect the royalties plaintiff should have received from the sales of the modified XB and VL-code catheters.  In addition, plaintiff asks the court to reconsider its decision regarding enhanced damages; he argues the court should award treble, as opposed to double, damages.  Finally, plaintiff asks the court to sanction defendant for its failure to disclose the additional catheter lines.

Defendant agrees that amending the judgment to reflect the additional damages and associated pre-judgment interest is warranted.  It notes, however, that

---

[17]Because defendant indicated its intent to continue to sell the infringing XB series catheters, the court ordered defendant to file quarterly reports of its sales beginning September 15, 2006 and every three months thereafter until final resolution of this matter.  Order at 13 (W.D. Okla. Sept. 5, 2006) (Doc. No. 389).

the parties already anticipated issuance of an amended judgment if plaintiff prevails on appeal, since that would be required to account for post-judgment sales of the XB series catheters.  Thus, it suggests deferring any amendment of the judgment until that time.  Given the court's reconsideration of its enhanced damages ruling, however, amendment of the judgment is necessary and there is no reason to postpone its entry.

In ruling on plaintiff's request for enhanced damages, the court analyzed this case in light of the factors enunciated by the Federal Circuit in Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir. 1992).  The court noted that the "closeness of the case" factor was neutral because "[a]lthough the jury's relatively quick deliberation might indicate the issues that remained for decision were not close, other issues – including literal infringement – were decided adversely to plaintiff prior to trial." Order at 7 (W.D. Okla. Sept. 5, 2006) (Doc. No. 389).  Defendant now admits, at least with respect to the VL-code catheters, that it copied the commercial embodiment of the '625 claims.  David Dillon, defendant's sales representative in Buffalo, New York during the relevant time period, relates that:

> One of my customers, a cardiologist at Buffalo General Hospital, requested some special order catheters *based on the tip shape of a SciMed VL catheter* in 1999.  I placed a special order with the customer's specifications, including his requested diameters, usable length, and shape.  To describe the catheter shape, *I photocopied SciMed VL catheters*.

Affidavit of David Dillon at ¶ 3, Exhibit 67 to Cordis' Sur-Reply to Voda's Motion for

Relief from Judgment, to Enter Amended Judgment, and Sanctions (Doc. No. 442)

(emphasis added).  While the court cannot unring the bell and determine, based on

the record before it, that this copying constitutes literal infringement,[18] it is sufficient

to tip the balance of equities in plaintiff's favor on the issue of enhanced damages.

Furthermore, while defendant's failure to disclose the modified XB and VL-code

catheter lines does not constitute bad faith, it is inexplicable given the breadth of

plaintiff's discovery requests.[19]  In light of the newly discovered evidence regarding

the VL-code catheters, the court finds plaintiff has established that relief under Rule

60(b)(2) is warranted.    Therefore, based on the totality of the circumstances,

including the newly discovered information, the court exercises its discretion to treble

the infringement damages.  Based on its finding that defendant did not act in bad

faith, the court denies plaintiff's request for sanctions.  There is no basis for an

---

[18]While copying of "'[i]deas' and 'design' would encompass, for example, copying the commercial embodiment, not merely the elements of a patent claim", Read Corp., 970 F.2d at 827 n.7, this does not establish infringement.  *See* Zenith Labs., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir.), *cert. denied*, 513 U.S. 995 (1994) ("[I]t is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent.").

[19]Defendant's assertion that "Voda's discovery requests were limited to 'XB series' catheters" is erroneous.  Cordis' Sur-Reply at 3.  Plaintiff's First Request for Production of Documents and Things from Defendant Cordis Corporation defined "XB series catheter" as "the guiding catheters made by or for, sold, imported or offered for sale by Cordis that: (1) are marketed under the 'XB' designation or name; (2) are similar in structure and function to catheters; and (3) Cordis has compared to the Patents-in-Suit."  Exhibit 1 to Memorandum in Support of Plaintiff's Motion to Compel Discovery Materials at 5 (Doc. No. 36-3).  This definition is certainly broad enough to encompass the modified XB and VL-code catheters.

award of fees and expert witness expenses pursuant to Fed. R. Civ. P. 37.   Mr. Griffis' testimony regarding the XB series catheters would have been required even if plaintiff had had access to the VL-code catheters prior to trial.   "A proper infringement analysis requires comparison of the accused design to the patent claims, not to another design."  <u>Lund Indus., Inc. v. GO Indus., Inc.</u>, 938 F.2d 1273, 1275 (Fed. Cir. 1991).

* * *

Plaintiff's Motion for Relief from Judgment, to Enter Amended Judgment and Sanctions (Doc. No. 431) is GRANTED in part and DENIED in part.

IV.    <u>Conclusion</u>

For the reasons set forth above Cordis' Motion for a New Trial (Doc. No. 400) and Cordis' Motion for Judgment as a Matter of Law (Doc. No. 401) are DENIED. Plaintiff's Motion for Relief from Judgment, to Enter Amended Judgment and Sanctions (Doc. No. 431) is GRANTED in part and DENIED in part.  The court will issue an amended judgment in accordance with this order.

It is so ordered this 27th day of March, 2007.

_Tim Leonard_

TIM LEONARD
United States District Judge