# *United States Court of Appeals for the Federal Circuit*

05-1238

JAN K. VODA, M.D.,

Plaintiff-Appellee,

v.

CORDIS CORPORATION,

Defendant-Appellant.

# *JUDGMENT*

**ON APPEAL from the     UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF OKLAHOMA**

**in Case NO(S):        03-CV-1512**

**This CAUSE having been heard and considered, it is**

**ORDERED and ADJUDGED:**

**VACATED and REMANDED**

ENTERED BY ORDER OF THE COURT

*DATED*   FEB 0 1 2007                           *Jan Horbaly,*



CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By_____ Date: 5/21/07

**ISSUED AS A MANDATE:** MAY 2 1 2007

# United States Court of Appeals for the Federal Circuit

05-1238

JAN K. VODA, M.D.,

Plaintiff-Appellee,

v.

CORDIS CORPORATION,

Defendant-Appellant.

Mitchell G. Stockwell, Kilpatrick Stockton LLP, of Atlanta, Georgia, argued for plaintiff-appellee.  With him on the brief was Jonathan K. Waldrop.  Of counsel was John A. Kenney, McAfee & Taft, of Oklahoma City, Oklahoma.

John M. DiMatteo, Willkie Farr & Gallagher LLP, of New York, New York, argued for defendant-appellant.  With him on the brief were Kelsey I. Nix and Diane C. Ragosa.

William C. Rooklidge, Howrey LLP, of Irvine, California, for amicus curiae American Intellectual Property Law Association.  With him on the brief were Christopher J. Kelly, Mayer, Brown, Rowe & Maw LLP, of Washington, DC; and Claudia Wilson Frost and Sharon A. Israel, of Houston, Texas.

William M. Atkinson, Alston & Bird LLP, of Charlotte, North Carolina, for amicus curiae The Federal Circuit Bar Association.  With him on the brief was Charles F. Schill, The Federal Circuit Bar Association, of Washington, DC.

Scott R. McIntosh, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, for amicus curiae United States.  With him on the brief were Peter D. Keisler, Assistant Attorney General.  Of counsel on the brief were James A. Toupin, General Counsel, John M. Whealan, Solicitor, Cynthia C. Lynch and Joseph G. Piccolo, Associate Solicitors, United States Patent and Trademark Office, of Arlington, Virginia.

George L. Graff, Paul, Hastings, Janofsky & Walker LLP, of New York, New York, for amicus curiae Intellectual Property Owners Association.  With him on the brief were J. Jeffrey Hawley, Intellectual Property Owners Association, of Washington, DC, and Douglas K. Norman, Eli Lilly and Company, of Indianapolis, Indiana.  Of

counsel was <u>Herbert C. Wamsley</u>, Intellectual Property Owners Association, of Washington, DC.

<u>John R. Thomas</u>, Georgetown University Law Center, of Washington, DC, for amici curiae Law Professors.

Appealed from:  United States District Court for the Western District of Oklahoma

Judge Tim Leonard

# United States Court of Appeals for the Federal Circuit

05-1238

JAN K. VODA, M.D.,

Plaintiff-Appellee,

v.

CORDIS CORPORATION,

Defendant-Appellant.

---

DECIDED:  February 1, 2007

---

Before NEWMAN, GAJARSA, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge GAJARSA.   Dissenting opinion filed by Circuit Judge NEWMAN.

GAJARSA, Circuit Judge.

This is an interlocutory appeal by Cordis Corp. from a decision of the U.S. District Court for the Western District of Oklahoma assuming supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over the foreign patent infringement claims of Jan K. Voda, M.D. ("Voda").   The district court established jurisdiction over Voda's original claims of U.S. patent infringement pursuant to § 1338.   In a subsequent order, the district court granted Voda leave to amend his complaint to add infringement claims based on foreign patents.  Voda's amended complaint alleged infringement taking place outside the United States in violation of patents issued by various foreign countries.

The district court found subject matter jurisdiction over the foreign patent claims pursuant to the supplemental jurisdiction statute § 1367. <u>Voda v. Cordis Corp.</u>, No. 03-1512, slip op. at 2 (W.D. Okla. Aug. 2, 2004).  The district court certified its order for interlocutory review pursuant to § 1292(b).  We agreed that the interlocutory appeal "involve[s] a controlling question of law to which there is a substantial difference of opinion and for which an immediate appeal may materially advance the ultimate termination of the litigation" and thus, granted Voda's petition for interlocutory appeal of "whether the district court has supplemental subject matter jurisdiction over Dr. Voda's five foreign patents." <u>Voda v. Cordis Corp.</u>, 122 Fed. App'x 515 (Fed. Cir. 2005).  This court has jurisdiction pursuant to § 1292(b) and (c).

In <u>Stein Associates, Inc. v. Heat & Control, Inc.</u>, 748 F.2d 653, 658 (Fed. Cir. 1984), this court held that U.S. district courts had no discretionary power to enjoin a party from enforcing a foreign patent before a foreign tribunal.  We stated unequivocally that "the issues are not the same, one action involving United States patents and the other involving British patents" and that "[o]nly a British court, applying British law, can determine validity and infringement of British patents."  In this case, we are presented with a different issue but one that raises similar concerns: whether a district court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over infringement claims based on foreign patents.  For the reasons discussed below, we conclude that the district court erred in granting leave to amend based on § 1367.  Accordingly, we vacate the order of the district court granting leave to amend and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The plaintiff-appellee Voda is a resident of Oklahoma City, Oklahoma.   The defendant-appellant Cordis is a U.S.-based entity incorporated in Florida.   None of the several foreign Cordis affiliates is a party to the present action, and we note that they appear to be separate legal entities.[1]   These foreign affiliates have not been joined to this action.[2]  To prevent confusion, we refer to the defendant-appellant as "Cordis U.S."

The patents at issue relate generally to guiding catheters for use in interventional cardiology.  The details of the technology are not essential here.  Voda's U.S. patents stem from a common continuation-in-part ("CIP") application filed in October 1992, which provides the written description common to the three U.S. patents at issue in this case:  U.S. Patent Nos. 5,445,625 (the '625 patent), 6,083,213 (the '213 patent), and 6,475,195 (the '195 patent).   The foreign patents issued from a common Patent Cooperation Treaty ("PCT") application.  The PCT application designated the European Patent Office ("EPO") and Canada as recipients.   Voda's EPO patent application eventually generated European Pat. No. 0 568 624, British Pat. No. GB 568 624, French Pat. No. FR568624, and German Pat. No. DE 69 23 20 95.   The PCT application also ultimately led to the issuance of Canadian Pat. No. CA 2,100,785.

Voda sued Cordis U.S. in the United States District Court for the Western District of Oklahoma alleging infringement of his three U.S. patents: claims 1-2 and 5-7 of the

---

[1]       For example, in addition to Cordis (U.S.), there are Cordis U.K., Ltd., Cordis S.A. (France), Cordis G.m.b.H. (Germany), Cordis S.p.A. (Italy), and Cordis Benelux (Netherlands).   All of the Cordis companies, both U.S. and foreign, are members of the Johnson & Johnson family of companies.

[2]       Therefore, to the extent that the dissent suggests that the district court has personal jurisdiction of the foreign Cordis entities, it is incorrect.  See Dissent 1, 10, 19.

05-1238                                      3

'625 patent, claims 1-5 of the '213 patent, and claims 1-6 of the '195 patent.  Cordis U.S. answered by asserting noninfringement and invalidity of the U.S. patents.

Voda then moved to amend his complaint to add claims of infringement of the European, British, Canadian, French, and German foreign patents.  Voda's amended complaint alleges that "Cordis [U.S.] has commenced and continues acts of making, selling, offering for sale and selling at least the XB guiding catheter, which is covered by [the several foreign patents] without Dr. Voda's authority.  Such acts constitute infringement, under corresponding foreign law of [these several foreign patents]."  Cordis U.S. has admitted that "the XB catheters have been sold domestically and internationally since 1994.  The XB catheters were manufactured in Miami Lakes, Florida from 1993 to 2001 and have been manufactured in Juarez, Mexico since 2001."  Voda's amended complaint asks for damages, fees, and "such other and further relief as this Court deems just and proper."  We resolve the jurisdictional issue based upon those allegations, accepting them to be true.

Cordis U.S. opposed Voda's attempt to amend its complaint to add foreign patent infringement claims on the basis that the district court lacked subject matter jurisdiction over such claims.  The parties briefed the court regarding its jurisdiction over foreign patent infringement claims under 28 U.S.C. § 1367(a) and its discretion to exercise supplemental jurisdiction under § 1367(c).  In a three-page order, the district court analyzed two circuit court cases discussing supplemental jurisdiction over patent claims, Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368 (Fed. Cir. 1994) (finding no jurisdiction), and Ortman v. Stanray, 371 F.2d 154 (7th Cir. 1967) (affirming district court's denial of a motion to dismiss foreign patent infringement claims).  The district

court determined that "[t]he allegations in the [proposed] amended complaint demonstrate that this case is more akin to <u>Ortman</u> than to <u>Mars</u>" and thus, that "it would have supplemental jurisdiction over the foreign patent[] claim[s]." <u>Voda v. Cordis</u>, No. CIV-03-1512-L, slip op. at 2 (August 2, 2004).   Therefore, the district court granted Voda's motion to file his amended complaint. <u>Id.</u>

Cordis U.S. appeals, and in light of this appeal, the proceedings with respect to the foreign patent infringement claims have been stayed.[3]  The record indicates that an answer to the amended complaint has not been filed and that discovery has not been taken on the foreign claims.  While the record therefore does not establish the defenses Cordis U.S. would raise, Cordis U.S. represents on appeal that it would raise invalidity of the foreign patents as a defense.

A proper exercise of subject matter jurisdiction pursuant to § 1367 requires both the presence of jurisdiction under subsection (a) and an appropriate decision to exercise that jurisdiction under subsection (c).   For the reasons discussed below, we conclude that the district court erred under subsection (c).

## II. STANDARD OF REVIEW

The existence of supplemental jurisdiction over foreign patent claims based on claims of U.S. patent infringement is a question unique to U.S. patent law, and thus, we apply the law of our circuit rather than that of the regional circuit.  <u>Mars</u>, 24 F.3d at 1371 ("The issue whether the district court had jurisdiction to hear Mars' claim of Japanese patent infringement is of importance to the development of the patent law and is clearly

---

[3]     It appears that the district court conducted a jury trial on Voda's U.S. patent infringement claims, and that the jury found in favor of Voda on May 25, 2006. (Jury Verdict, May 25, 2006.)  None of the parties or amicus curiae informed the court of this event, and we do not consider it necessary to our ultimate holding.

a matter that falls within the exclusive subject matter responsibility of this court." (quotation marks and citations omitted)); see Lab. Corp. of Am. Holdings v. Chiron Corp., 384 F.3d 1326, 1330 (Fed. Cir. 2004) (applying Federal Circuit law because we "apply the law of the regional circuit . . . unless the issue pertains to or is unique to patent law, in which case we will apply our own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right" (quotation marks omitted)); cf. Unitherm Food Sys. v. Swift-Eckrich, Inc., 126 S. Ct. 980, 984 (2006) (recognizing that Federal Circuit is bound to apply procedural law of regional circuit in case where issue did not pertain uniquely to patent law).

We have noted that "[t]his Court . . . reviews jurisdiction, a question of law, de novo." Dehne v. United States, 970 F.2d 890, 892 (Fed. Cir. 1992) (citation omitted); see also Elder v. Holloway, 510 U.S. 510, 516 (1994) ("[Q]uestion[s] of law . . . must be resolved de novo on appeal."). "A party seeking the exercise of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists." Mars, 24 F.3d at 1372 (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936)); cf. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1861 (2006) ("[P]arties . . . asserting federal jurisdiction[] carry the burden of establishing their standing under Article III."). Here, Voda must carry this burden.

### III. DISCUSSION

The Supreme Court has stated many times that the "district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, ---, 125 S. Ct. 2611, 2616-17 (2005) (quoting Kokkonen v. Guardian Life Ins. Co. of Am.,

05-1238

6

511 U.S. 375, 377 (1994)).  In addition, "district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by [the Supreme] Court applies."  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 174 (1997).

In this case, the parties do not dispute that the Constitution may authorize district courts to hear infringement claims based on foreign patents.  See U.S. Const. art. III, § 2 ("[J]udicial Power shall extend . . . to Controversies . . . between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.").  Rather, the critical disputed issue is whether there is any statutory basis for such subject matter jurisdiction.[4]

## A.   Asserted Statutory Basis

Voda asserts that the district court has supplemental jurisdiction under 28 U.S.C. § 1367 of his foreign patent infringement claims.[5]  The Supreme Court has noted that the statute "is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction."  Exxon, 125 S. Ct. at 2620.  "The presence of other claims in

---

[4]      The dissent broadly states that no court has held "that it had no power or authority to receive the foreign issue."  Dissent 6.  Yet, the first case cited by the dissent to support this broad proposition, written by the dissenting author, held that there was no jurisdiction and alternatively, affirmed the dismissal based on forum non conveniens.  See Bonzel v. Pfizer, Inc., 439 F.3d 1358, 1362-65 (Fed. Cir. 2006); see also Mars, 24 F.3d at 1373-75 (holding that no federal question or supplemental jurisdiction existed).

[5]      Voda has asserted no other statutory basis for subject matter jurisdiction.  Therefore, the dissent's assertion that "judicial authority to determine and apply foreign law does not require that the foreign issue is supplemental to a domestic issue," Dissent 8, is irrelevant in this case.  Similarly, the cases cited by the dissent that rely on federal question jurisdiction or diversity jurisdiction are inapposite.  See, e.g., Uebersee Finanz-Korporation, A.G. v. McGrath, 343 U.S. 205, 206 (1952) (claim under U.S. law, Trading with the Enemy Act of 1917); Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 61-63 (1st Cir. 2002) (claim under U.S. copyright law); Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) (diversity jurisdiction); see also Dissent 3-5.

05-1238

the complaint, over which the district court may lack original jurisdiction, is of no moment." Id.; cf. Marshall v. Marshall, 126 S. Ct. 1735, 1749 (2006) (stating in diversity context that jurisdiction "is determined by the law of the court's creation and cannot be defeated by the extraterritorial operation of a [state] statute . . . , even though it created the right of action" (quotation marks and citations omitted)).

The Supreme Court has also noted that § 1367 both "authorize[s] the district courts to exercise supplemental jurisdiction" and "confirms the discretionary nature of supplemental jurisdiction." Chicago, 522 U.S. at 172-73. Therefore, to allow Voda to amend his complaint to add infringement claims based on foreign patents using § 1367 supplemental jurisdiction, we must evaluate (1) whether § 1367(a) authorizes such supplemental jurisdiction and (2) whether the district court's exercise of such supplemental jurisdiction was within its § 1367(c) discretion.

    1.    <u>Authorization</u>

Section 1367(a) provides the statutory authority for district courts to exercise supplemental jurisdiction over certain claims outside their original jurisdiction.

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). This language reveals four limits on the reach of § 1367(a).

First, § 1367(a) does not authorize supplemental jurisdiction where "expressly provided otherwise by Federal statute." In this case, none of the parties or the amicus

curiae cite any statute, and we have found none, that expressly strips federal courts of supplemental jurisdiction of claims arising under either foreign patents or foreign laws.

Second, § 1367(a) lists subsection (b) as an exception.  Subsection (b) pertains to "any civil action of which the district courts have original jurisdiction founded solely on" diversity and thus, is not relevant here.

Third, § 1367(a) also lists subsection (c) as an exception.  We discuss subsection (c), which enumerates the circumstances under which the "district courts may decline to exercise supplemental jurisdiction," in infra Part III.A.2.

Fourth, § 1367(a) authorizes supplemental jurisdiction only over claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  This statutory "case or controversy" language extends to the limits of Article III.  See, e.g., Jones v. Ford Motor Credit Co., 358 F.3d 205, 212 n.5 (2d Cir. 2004); Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1299 (7th Cir. 1995).

In this case, it is undisputed that the district court has original federal question jurisdiction over Voda's U.S. patent infringement claims.  In addition, § 1367(a) appears to authorize supplemental jurisdiction over foreign law claims in certain limited circumstances.  Specifically, § 1367(a) provides the statutory authority for federal courts to exercise supplemental jurisdiction over claims that are outside the limited original jurisdiction of federal district courts, including those within the general jurisdiction of state courts.  Therefore, because the "inherent powers" of state courts "permit them to entertain transitory causes of action arising under the laws of foreign sovereigns," Tafflin v. Levitt, 493 U.S. 455, 470 (1990) (Scalia, J., concurring) (citing McKenna v. Fisk, 42

U.S. (1 How.) 241, 247-249 (1843)), § 1367 supplemental jurisdiction appears to include foreign law claims. See also Printz v. United States, 521 U.S. 898, 907 (1997) ("[U]nlike legislatures and executives, [courts] applied the law of other sovereigns all the time."). Therefore, the § 1367(a) issue we discuss here is whether Voda's claims of foreign patent infringement "form part of the same case or controversy under Article III."

> a.    "Common nucleus of operative fact"

The Supreme Court has interpreted the statutory requirement of § 1367(a) that foreign claims be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" as Congress's codification of the Court's

> principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'"

Chicago, 522 U.S. at 164-65 (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)) (additional citations omitted) (emphasis added); see also 13B Wright, Miller, Cooper & Freer, Federal Practice & Procedure § 3567.1, at n.42 (2d ed. Supp. 2005).

With regard to the relationship between foreign and U.S. patent infringement claims, we stated in Stein that "the issues are not the same" where "one action involv[es] United States patents and the other involv[es] British patents." 748 F.2d at 658. Mars, 24 F.3d 1368, however, is the first and only case of this court that expressly evaluates whether supplemental jurisdiction under § 1367(a) extends to infringement

05-1238

claims based on foreign patents.  In <u>Mars</u>, we applied the "common nucleus of operative fact" rubric to determine whether § 1367(a) authorized supplemental jurisdiction over an infringement claim based on a Japanese patent.  We held that "the district court erred in assuming that it had 'power' to hear the Japanese patent infringement claim under section 1367(a)."  <u>Id.</u> at 1375.   Based on the facts alleged in the complaint, we reasoned:

> We conclude that the foreign patent infringement claim at issue here is not so related to the U.S. patent infringement claim that the claims form part of the same case or controversy and would thus ordinarily be expected to be tried in one proceeding.  [1] The respective patents are different, [2] the accused devices are different, [3] the alleged acts are different, and [4] the governing laws are different.  The assertion of supplemental jurisdiction over the Japanese infringement claim would in effect result in the trial court having to conduct two separate trials at one time.

<u>Id.</u>  Regarding the first three factors, we noted (1) that in the U.S. patent "[a]ll three claims are method claims directed to the electronic examination and identification of coins" whereas "[i]n contrast, the sole claim of the Japanese Patent . . . is an apparatus claim that does not literally contain the limitations of [the asserted] claims . . . of the U.S. patent"; (2) that the claims of U.S. and Japanese patent infringement focused on different devices and that "the range of accused devices in Japan is much broader than in the United States"; and (3) that although Mars charged the defendant with acts of both direct and induced infringement of its U.S. patent, it charged the defendant with only direct infringement of the Japanese patent.  <u>Id.</u>

In this case, Voda does not dispute the assertion of Cordis U.S. that the "governing laws in each of the foreign courts differ in important ways."  The parties dispute whether the patents are different.  Cordis U.S. asserts that the patents differ

05-1238

materially, while Voda asserts that they differ only in slight respects.[6]  With respect to the other factors, however, there appear to be more commonalities than in Mars. Voda's amended complaint identifies Cordis U.S.'s XB guiding catheter as the accused device for the domestic and foreign infringement claims.  Voda also alleges the same type of direct infringement, i.e., making, offering for sale, and selling, for all infringement claims.

In addition, it is important to note that Mars does not supplant the "common nucleus of operative fact" test established by the Supreme Court in Gibbs and codified by Congress in § 1367(a).  Mars simply listed four differences between the claims in that particular case that were sufficient for finding no "common nucleus of operative fact."  As such, while providing precedential guidance, Mars did not establish either an exhaustive list of the factors district courts may consider under § 1367(a) or the necessary conditions for a finding of no supplemental jurisdiction.

The district court failed to articulate any such analysis.  The district court correctly observed that Mars did not establish a per se rule preventing U.S. courts from asserting supplemental jurisdiction to adjudicate foreign patents, but then summarily concluded that the "allegations in the amended complaint demonstrate that this case [wa]s more akin to Ortman[, 371 F.2d 154 (7th Cir. 1967),] than to Mars.  Based on those allegations, the [district] court [found] that it would have supplemental jurisdiction over the foreign patents claims."  Voda, slip op. at 2.  Even if we agreed that this case were

---

[6]      Therefore, none of the parties would agree with the dissent's conclusions that "the specifications are the same" or that the patents "are identical." Dissent 10, 13. Moreover, it is unclear how the dissent arrives at these conclusions when the French and German patents are in different languages, and the record on appeal provides no translations.

"more akin" to Ortman than Mars, that does not answer the legal question of whether there is a "common nucleus of operative fact" in this case.

Here, the district court did not articulate any findings regarding the Mars factors.[7] Moreover, although the determination of foreign law is a question of law, we as an appellate court cannot take any expert testimony to determine the extent of the differences in the governing laws. See Fed. R. Civ. P. 44.1 (governing determination of foreign law).   Since the scope of a foreign patent depends on foreign law, such testimony would also inform a comparison of the patents themselves.   Therefore, because we hold in infra Part III.A.2 that the district court abused its discretion under § 1367(c), we deem it to be the more prudent course not to decide this "common nucleus of operative fact" question in the first instance.

> b.   "Ordinarily be expected to try them all in one judicial proceeding"

Seizing on the Supreme Court's language in Gibbs, one of the amicus curiae asserts that in determining the existence of "the same case or controversy" under § 1367(a), we must examine not only whether there is a "common nucleus of operative fact," but also whether a district court would "ordinarily be expected to try [domestic and foreign patent infringement claims] all in one judicial proceeding."

While courts generally focus on the phrase "common nucleus of operative fact," there is an ambiguity in Gibbs, in which the Supreme Court stated:

---

[7]   The Supreme Court has stated that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978) (citation omitted). The dissent cites no authority to the contrary to support its position that it is "unfair" and "inappropriate to criticize the judge for not making findings or taking evidence at the pleading stage." Dissent 11.

05-1238

> The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a <u>common nucleus of operative fact</u>. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would <u>ordinarily be expected to try them all in one judicial proceeding</u>, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

383 U.S. at 725 (citation and footnote omitted) (emphasis added). From the text of <u>Gibbs</u>, it is therefore unclear how the phrases "common nucleus of operative fact" and "ordinarily be expected to try them all in one judicial proceeding" relate.

The Court's subsequent use of the <u>Gibbs</u> language indicates that the phrases could represent two separate and necessary tests or that the phrase "ordinarily be expected" is irrelevant. <u>Compare</u> <u>Exxon</u>, 125 S. Ct. at 2632 (Ginsburg, J., dissenting) ("'[T]here is power in federal courts to hear the whole,' the Court said, when the <u>state</u> and federal claims 'derive from a common nucleus of operative fact' and are so linked that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" (emphasis added)), <u>and</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 349 (1988) ("The Court stated that a federal court has jurisdiction over an entire action, including <u>state-law</u> claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" (emphasis added)), <u>with</u> <u>Chicago</u>, 522 U.S. at 165 ("'[T]he <u>state</u> and federal claims 'derive from a common nucleus of operative fact,' . . . . That is all the statute requires to establish supplemental jurisdiction." (citation omitted) (emphasis added)).

Similarly, this court's use of the <u>Gibbs</u> language indicates that the phrases could represent two separate and necessary tests or that the phrase "ordinarily be expected

to try them all in one judicial proceeding" merely informs the "common nucleus of operative fact" analysis.  Compare Stark v. Advanced Magnetics, Inc., 29 F.3d 1570, 1578 (Fed. Cir. 1994) (finding § 1367 requirements met where "there is a substantial federal claim; the federal and state claims derive from common operative facts; and the plaintiff would normally expect to try all of the claims in a single proceeding"), with Highway Equip. Co., Inc. v. FECO, Ltd., 469 F.3d 1027, 1037-38 (Fed. Cir. 2006) ("For this relatedness requirement to be satisfied, '[t]he state and federal claims must derive from a common nucleus of operative fact' such that they would ordinarily be expected to be tried in one proceeding." (citation omitted)), and Mars, 24 F.3d at 1374 ("The Court further explained that the requisite relatedness between the federal and non-federal claims exists for jurisdictional purposes when the claims derive from a 'common nucleus of operative fact,' and as such, would ordinarily be expected to be tried in one proceeding.").

If the phrase "ordinarily be expected to try them all in one judicial proceeding" does play a role in the scope of § 1367(a) authorization via Gibbs, district courts may be unable to exercise supplemental jurisdiction over claims based on foreign patents if the norm is that patent claims are adjudicated by the courts within the jurisdiction where such patents are created.  Neither the Supreme Court nor this court, however, has addressed whether the phrase "ordinarily be expected to try them all in one judicial proceeding" constitutes an independent requirement under the "same case or controversy requirement" of § 1367(a).  Because the district court abused its discretion under § 1367(c), however, we need only state in this case that none of the briefs have persuaded us to hold that such an additional requirement exists.

05-1238

Accordingly, we refrain from deciding whether Voda's foreign patent infringement claims fall within the scope of the "same case or controversy" requirement of § 1367(a).

    2.   <u>Discretion</u>

Section 1367 "reaffirms that the exercise of supplemental jurisdiction is within the discretion of the district court." <u>Mars</u>, 24 F.3d at 1374; <u>see also</u> <u>Chicago</u>, 522 U.S. at 172 (stating that supplemental jurisdiction statute codifies principle "that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons" (quoting <u>Gibbs</u>, 383 U.S. at 726)). A district court's discretion, however, is not unfettered, and we review the district court's decision not to decline supplemental jurisdiction under 28 U.S.C. § 1367(c) under an abuse of discretion standard. <u>Mars</u>, 24 F.3d at 1375 n.4; <u>see also</u> <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998) ("We review the decision of the district court to exercise supplemental jurisdiction over state law claims for an abuse of discretion."). We address the limits of that discretion here and conclude that the district court's exercise of supplemental jurisdiction over Voda's foreign patent infringement claims is independently limited by subsection (c).

Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>> (1) the claim raises a novel or complex issue of State law,
>> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Supreme Court has noted that the "statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" <u>Chicago</u>, 522 U.S. at 173 (citation omitted).

Voda asserts that such considerations "have nothing to do with, the certified question concerning <u>existence</u> of subject-matter jurisdiction."  We disagree.  The text of § 1367(a) indicates § 1367(c) constitutes an express statutory exception to the authorization of jurisdiction granted by § 1367(a).  In this case, Cordis U.S. asserted that the district court should exercise its discretion to decline supplemental jurisdiction of Voda's foreign patent claims at the end of its opposition to Voda's motion to amend the complaint.  The district court's order contained no § 1367(c) analysis.  We find that considerations of comity, judicial economy, convenience, fairness, and other exceptional circumstances constitute compelling reasons to decline jurisdiction under § 1367(c) in this case and therefore, hold that the district court abused its discretion by assuming jurisdiction.

a.    Treaties as the "supreme law of the land"

Article VI of the Constitution proclaims that "all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land." U.S. Const. art. VI, cl.2.  The Supreme Court has accordingly stated that "a treaty ratified by the United States is not only the law of this land, see U.S. Const., Art. II, § 2, but also an agreement among sovereign powers." <u>El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng</u>, 525 U.S. 155, 167 (1999) (citation omitted).

05-1238

The United States entered into Articles 13 through 30 of the Paris Convention for the Protection of Industrial Property ("Paris Convention") on September 5, 1970 and Articles 1 through 12 of the Paris Convention on August 25, 1973. Paris Convention, art. 13-30, 21 U.S.T. 1583; id., art. 1-12, 24 U.S.T. 2140. Article 4*bis* of the Paris Convention states that U.S. patents "shall be independent of patents obtained for the same invention in other countries" and that the "foregoing provision is to be understood in an unrestricted sense, . . . both as regards the grounds for nullity and forfeiture." In addition, Article 2(3) of the Paris Convention states that the "provisions of the laws of each of the countries of the Union relating to judicial and administrative procedure and to jurisdiction, . . . which may be required by the laws on industrial property are expressly reserved." The Paris Convention thus clearly expresses the independence of each country's sovereign patent systems and their systems for adjudicating those patents. Nothing in the Paris Convention contemplates nor allows one jurisdiction to adjudicate the patents of another, and as such, our courts should not determine the validity and infringement of foreign patents. Accordingly, while the Paris Convention contains no express jurisdictional-stripping statute, we relied on it in <u>Stein</u> to hold that "[o]nly a British court, applying British law, can determine validity and infringement of British patents." 748 F.2d at 658.

Subsequently, the United States adopted the Patent Cooperation Treaty ("PCT") on January 24, 1978. Patent Cooperation Treaty, 28 U.S.T. 7645. As with the Paris Convention, the text of the PCT maintains the independence of each country's patents. Article 27(5) states: "Nothing in this Treaty and the Regulations is intended to be

construed as prescribing anything that would limit the freedom of each Contracting State to prescribe such substantive conditions of patentability as it desires."

On January 1, 1995, the United States joined the World Trade Organization by entering the Marrakesh Agreement Establishing the World Trade Organization, which through Article II § 2 binds all of its members to the Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPS").  1867 U.N.T.S. 154, 33 I.L.M. 1144 (Apr. 15, 1994).  The Agreement on TRIPS contains several provisions regarding the enforcement of patents.  Article 41 § 1 of the Agreement on TRIPS specifies that each country "shall ensure that enforcement procedures as specified in this Part are available under their law so as to permit effective action against any act of infringement of intellectual property rights."  In addition, § 4 states that "[p]arties to a proceeding shall have an opportunity for review by a judicial authority of final administrative decisions and, subject to jurisdictional provisions in a Member's law concerning the importance of a case," and § 5 states "[i]t is understood that this Part does not . . . affect the capacity of Members to enforce their law in general."  See also id., art. 41-49.  Like the Paris Convention, nothing in the PCT or the Agreement on TRIPS contemplates or allows one jurisdiction to adjudicate patents of another.[8]  Canada, France, Germany, and the United Kingdom, which are the foreign sovereigns concerned in this case, are parties to

---

[8]     While the European Patent Convention ("EPC") states nothing of our government's intent because the United States is not a party, it may inform us on how other sovereigns treat foreign patent adjudication.  Regarding claims "to the right to the grant of a European patent," the EPC has enumerated rules specifying courts of exclusive jurisdiction.  European Patent Convention, Protocol on Recognition, art. 1-8, October 5, 1973.  None of the treaties entered into by the United States contain such language.  Moreover, while there have been working parties and draft agreements and statutes, even the members of the EPC have not yet agreed on a centralized European patent court.  See European Patent Office, "Legislative Initiatives in European Patent Law" (July 26, 2006), available at http://patlaw-reform.european-patent-office.org/epla/.

05-1238

each of these treaties. <u>See</u> World Intellectual Property Organization, "States Party to the PCT and the Paris Convention and Members of the World Trade Organization" (2006), <u>available at</u> http://www.wipo.int/pct/en/texts/pdf/pct_paris_wto.pdf.

Voda asserts and one of the amicus curiae briefs suggests that these international treaties evince a trend of harmonization of patent law and thus, that allowing the exercise of supplemental jurisdiction over Voda's foreign patent infringement claims furthers the harmonization goals underlying the treaties. Regardless of the strength of the harmonization trend, however, we as the U.S. judiciary should not unilaterally decide either for our government or for other foreign sovereigns that our courts will become the adjudicating body for any foreign patent with a U.S. equivalent "so re<u>lat</u>ed" to form "the same case or controversy." <u>Cf. F. Hoffman-La Roche Ltd. v. Empagran S.A.</u>, 542 U.S. 155, 166-67 (2004) (finding "no convincing justification" for providing such subject matter jurisdiction in antitrust context). Permitting our district courts to exercise jurisdiction over infringement claims based on foreign patents in this case would require us to define the legal boundaries of a property right granted by another sovereign and then determine whether there has been a trespass to that right.

Based on the international treaties that the United States has joined and ratified as the "supreme law of the land," a district court's exercise of supplemental jurisdiction could undermine the obligations of the United States under such treaties, which

05-1238

therefore constitute an exceptional circumstance to decline jurisdiction under § 1367(c)(4). Accordingly, we must scrutinize such an exercise with caution.[9]

### b.    Comity and relations between sovereigns

"Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S.D. of Iowa, 482 U.S. 522, 543 n.27 (1987).

> Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

Id. (quoting Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)) (quotation marks omitted) (emphasis added). Courts must also bear in mind that "whatever laws are carried into execution, within the limits of any government, are considered as having the same effect every where, so far as they do not occasion a prejudice to the rights of the other governments, or their citizens." Id. (quoting Emory v. Grenough, 3 U.S. (3 Dall.) 369, 370 (1797) (quotation marks and citation omitted)) (emphasis added). Société provides us with these considerations to guide our determination of whether an exercise of

---

[9]    In addition, even assuming that Cordis U.S. is responsible for manufacturing the allegedly infringing devices in Juarez, Mexico, and selling them in foreign countries, the dissent's assertion that we could adjudicate a foreign patent infringement action and enforce the judgment against Cordis U.S. for its foreign manufacturing and foreign sales, Dissent 1 n.1, would be an end-run around the territorial limits of 35 U.S.C. § 271. See Dowagiac, 235 U.S. at 650 ("The right conferred by a patent under our law is confined to the United States and its territories." (citation omitted)); cf. AT&T Corp. v. Microsoft Corp., 414 F.3d 1366 (Fed. Cir. 2005), cert. granted, 127 S. Ct. 467 (2006).

05-1238

comity supports extending or declining jurisdiction over the foreign patent infringement claims at issue here.  See id. at 543-44 (stating that international comity concept in evidence-gathering context requires particularized analysis of facts and sovereign interests).

In this case, these considerations of comity do not support the district court's exercise of supplemental jurisdiction over Voda's foreign patent infringement claims. First, Voda has not identified any international duty, and we have found none, that would require our judicial system to adjudicate foreign patent infringement claims.  As discussed supra Part III.A.2.a, while the United States has entered into the Paris Convention, the PCT, and the Agreement on TRIPS, nothing in those treaties contemplates or allows one jurisdiction to adjudicate the patents of another.  Second, as discussed infra Part III.A.2.d, Voda has not shown that it would be more convenient for our courts to assume the supplemental jurisdiction at issue.  Third, with respect to the rights of our citizens, Voda has not shown that foreign courts will inadequately protect his foreign patent rights.  Indeed, we see no reason why American courts should supplant British, Canadian, French, or German courts in interpreting and enforcing British, Canadian, European, French, or German patents.  Cf. Empagran, 542 U.S. at 165 (finding no reason to allow "American [antitrust] law [to] supplant, for example, Canada's or Great Britain's or Japan's own determination about how best to protect Canadian or British or Japanese customers from anticompetitive conduct").

Fourth, assuming jurisdiction over Voda's foreign patent infringement claims could prejudice the rights of the foreign governments.  None of the parties or amicus curiae have demonstrated that the British, Canadian, French, or German governments

05-1238

are willing to have our courts exercise jurisdiction over infringement claims based on their patents.  Cf. 28 U.S.C. § 1338(a) (granting federal courts exclusive jurisdiction of claims relating to U.S. patents).

In addition, the local action doctrine informs us that exercising supplemental jurisdiction in this case appears to violate our own norms of what sovereigns ordinarily expect.  Courts derived the local action doctrine from the distinction between local and transitory actions beginning with Livingston v. Jefferson, written by Justice John Marshall riding Circuit.  15 F. Cas. 660 (C.C.D. Va. 1811).  In Livingston, the plaintiff sued in a Virginia court for trespass to land located in Louisiana.  The court dismissed the action, holding that it could be brought only in a Louisiana court.  The Supreme Court subsequently held that "an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the State in which the land lies."  Ellenwood v. Marietta Chair Co., 158 U.S. 105, 107 (1895).  The Court concluded that a federal court sitting in another state had no jurisdiction to hear the trespass claim.  Id.  In short, the local action doctrine served to prevent courts from adjudicating claims for trespass or title to real property.

The territorial limits of the rights granted by patents are similar to those conferred by land grants.  A patent right is limited by the metes and bounds of the jurisdictional territory that granted the right to exclude.  See Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U.S. 641, 650 (1915) ("The right conferred by a patent under our law is confined to the United States and its territories." (citation omitted)); NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1313 (Fed. Cir. 2005) ("The territorial reach of section 271 is limited.  Section 271(a) is only actionable against patent infringement that

05-1238

occurs within the United States." (citations omitted)).  Therefore, a patent right to exclude only arises from the legal right granted and recognized by the sovereign within whose territory the right is located.  It would be incongruent to allow the sovereign power of one to be infringed or limited by another sovereign's extension of its jurisdiction.  Therefore, while our Patent Act declares that "patents shall have the attributes of personal property," 35 U.S.C. § 261, and not real property, the local action doctrine constitutes an informative doctrine counseling us that exercising supplemental jurisdiction over Voda's foreign patent claims could prejudice the rights of the foreign governments.

Therefore, the four considerations enunciated by the Supreme Court in Société demonstrate that extending our jurisdiction through § 1367(a) in this case could undermine "the spirit of cooperation" underlying the comity doctrine.  Because the purpose underlying comity is not furthered and potentially hindered in this case, adjudication of Voda's foreign patent infringement claims should be left to the sovereigns that create the property rights in the first instance.

In addition, as a rule of statutory construction, the Supreme Court "ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations." Empagran, 542 U.S. at 164; cf. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 60 (1978) ("[A] proper respect both for tribal sovereignty itself and for the plenary authority of Congress in [civil actions against tribal officers] cautions that we tread lightly in the absence of clear indications of legislative intent.").  As discussed, there is no explicit statutory direction indicating that the district courts should or may exercise supplemental jurisdiction over claims arising under foreign patents, and

05-1238

the Paris Convention, PCT, and Agreement on TRIPS neither contemplate nor allow the extraterritorial jurisdiction of our courts to adjudicate patents of other sovereign nations. We have also noted the territorially limited nature of patent rights. See Pellegrini v. Analog Devices, Inc., 375 F.3d 1113, 1117 (Fed. Cir. 2004) ("[As] the U.S. Supreme Court explained nearly 150 years ago in Brown v. Duchesne, 60 U.S. (19 How.) 183, 15 L. Ed. 595 (1857), . . . the U.S. patent laws 'do not, and were not intended to, operate beyond the limits of the United States.'"); Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("'[T]he right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated on acts wholly done in a foreign country.'" (quoting Dowagiac, 235 U.S. at 650)). Therefore, the principle that we should "avoid unreasonable interference with the sovereign authority of other nations" applies analogously here. Empagran, 542 U.S. at 164.

We would risk such interference by exercising supplemental jurisdiction over Voda's foreign patent infringement claims. Patents and the laws that govern them are often described as complex. Indeed, one of the reasons cited for why Congress established our court was because it "felt that most judges didn't understand the patent system and how it worked." Judge Pauline Newman, Origins of the Federal Circuit: The Role of Industry, 11 Fed. Cir. B.J. 541, 542 (2002). As such, Cordis U.S. and one of the amicus curiae assert, and Voda does not dispute, that the foreign sovereigns at issue in this case have established specific judges, resources, and procedures to "help assure the integrity and consistency of the application of their patent laws." Therefore, exercising jurisdiction over such subject matter could disrupt their foreign procedures.

05-1238

By analogy, Congress unified our patent jurisprudence by creating the Federal Circuit and granting exclusive jurisdiction of appeals on patent claims. 28 U.S.C. § 1295. Foreign courts exercising jurisdiction over claims based on U.S. patents would destroy Congress's intent to foster uniformity and to preclude forum shopping. Cf. Empagran, 542 U.S. at 168-69 (finding in antitrust context that "legally and economically technical nature of [examining foreign law, compared with American law] means lengthier proceedings, appeals, and more proceedings-to the point where procedural costs and delays could themselves threaten interference with a foreign nation's ability to maintain the integrity of its own antitrust enforcement system").

Accordingly, comity and the principle of avoiding unreasonable interference with the authority of other sovereigns dictate in this case that the district court decline the exercise supplemental jurisdiction under § 1367(c).

> c.   Judicial economy

Because of our lack of institutional competence in the foreign patent regimes at issue in this case, more judicial resources could be consumed by the district court than the courts of the foreign patent grants. Indeed, adjudication of Voda's British, Canadian, European, French, and German patent claims may substantially predominate his U.S. patent claims. Cf. § 1367(c)(2) (stating that district courts may decline exercising supplemental jurisdiction where "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction").

In addition, the likelihood of jury confusion in applying different patent regimes could result in separate trials. Cf. Gibbs, 383 U.S. at 726 ("Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury

confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed.Rule Civ.Proc. 42(b).").  Therefore, exercising supplemental jurisdiction in this case could result in at least the same magnitude of litigation as Voda filing patent infringement claims in each respective sovereign's court.

Voda and one amicus curiae point out that consolidated multinational patent adjudication could be more efficient.  While there may be merit in that argument, no international treaty establishes full faith and credit, nor have we found any analogous agreement that would require foreign countries to recognize or obligate the enforcement of our judgments regarding foreign patents.  In this case, Voda's amended complaint asks not only for damages and fees but also for "such other and further relief as this Court deems just and proper."  Therefore, the additional time and resources required by our courts may result in incomplete adjudication of the claims, prolonging and extending the expenditures by all.

The district court did not articulate any such judicial economy analysis, and accordingly, this absence of analysis supports our finding that the district court abused its discretion in this case.

        *d.*    *Convenience*

Similarly, factors of convenience may provide additional reasons to decline exercising supplemental jurisdiction in this case.  Again, the district court did not articulate any such analysis, further supporting our finding that it abused its discretion.

We note that the Supreme Court does not appear to have defined convenience in the context of discretionary exercises of supplemental jurisdiction.  While the parties have structured their arguments in this case around forum non conveniens, they have

provided no case law justifying incorporation of that doctrine into the consideration of convenience under § 1367(c).  Cf. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 248 n.13 (1981) (noting that Supreme Court first indicated that motions to dismiss on grounds of forum non conveniens could be made in federal diversity actions in Williams v. Green Bay & W.R. Co., 326 U.S. 549 (1946)); Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 606 (2d Cir. 1998) (stating that Supreme Court explicitly recognized applicability of forum non conveniens in federal question cases in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)).  Where the doctrine does not duplicate other factors already considered, however, forum non conveniens is a useful doctrine to reference.  For example, on one hand, the cost of obtaining and translating evidence, especially experts in foreign patent law pursuant to Fed. R. Civ. P. 44.1 (governing determination of foreign law), cuts against exercising supplemental jurisdiction.  On the other hand, deferring to the plaintiff's choice of forum would support such an exercise.

     e.    *Fairness*

Lastly, the act of state doctrine may make the exercise of supplemental jurisdiction over foreign patent infringement claims fundamentally unfair.  As "a 'principle of decision binding on federal and state courts alike,'" the act of state doctrine "requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid."  W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 406, 409 (1990) (citation omitted).  In this case, none of the parties or amicus curiae have persuaded us that the grant of a patent by a sovereign is not an act of state.  But see Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1293-94 (3d Cir. 1979) (stating that Third Circuit was "unable to accept the proposition

05-1238

that the mere issuance of patents by a foreign power constitutes [] an act of state" under abstention analysis). Therefore, assuming arguendo that the act of state doctrine applies, the doctrine would prevent our courts from inquiring into the validity of a foreign patent grant and require our courts to adjudicate patent claims regardless of validity or enforceability. Given the number of U.S. patent cases that we resolve on validity or enforceability as opposed to infringement grounds, exercising such jurisdiction could be fundamentally unfair to the alleged infringer where, as one amicus curiae points out, "the patent is in fact invalid and the defendant would be excused from liability on that basis in a foreign forum." Voda has not shown in this case that the validity of the foreign patents would not be at issue. Indeed, Cordis U.S. asserts otherwise.

> f. *Section 1367(c) abuse of discretion*

In summary, several reasons in this case would compel the district court to decline supplemental jurisdiction under § 1367(c): limitations imposed by treaties that are the "supreme law of the land" and considerations of comity, judicial economy, convenience, and fairness. The district court undertook none of this analysis. Accordingly, we hold that the district court abused its discretion in exercising supplemental jurisdiction.

As with the § 1367(a) factors of Mars, this is a non-exhaustive list, not a test, for district courts to consider under § 1367(c). In addition, we emphasize that because the exercise of supplemental jurisdiction under § 1367(c) is an area of discretion, the district courts should examine these reasons along with others that are relevant in every case, especially if circumstances change, such as if the United States were to enter into a new international patent treaty or if events during litigation alter a district court's

05-1238

conclusions regarding comity, judicial economy, convenience, or fairness.  However, "[d]iscretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike . . . a page of history is worth a volume of logic."  eBay, 126 S. Ct. at 1841-42 (Roberts, C.J., concurring) (quotation marks and citations omitted).

**B.   Alternate Statutory Basis**

The parties also dispute on appeal whether diversity jurisdiction under § 1332 provides an alternate and independent basis for the district court to hear Voda's claims of foreign patent infringement.  However, Voda has not pled diversity, and it is not clear whether the district court would permit such a pleading to be made at this stage in the proceedings.  We therefore decline to decide whether the district court could properly exercise jurisdiction based in diversity.

**C.   Abstention**

The "district courts may be obligated not to decide" claims arising under foreign patents "where one of the abstention doctrines articulated by [the Supreme] Court applies."  Chicago, 522 U.S. at 174.  Abstention doctrines "embody the general notion that federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration."  Id. (quotation marks and citation omitted).  Because we resolve the district court's jurisdiction on statutory grounds, we do not discuss or make any holdings regarding abstention here.

05-1238

## IV. CONCLUSION

We vacate the order of the district court granting Voda leave to amend his complaint to add infringement claims based on foreign patents pursuant to the supplemental jurisdiction statute 28 U.S.C. § 1367 and remand for further proceedings consistent with this opinion.

VACATED and REMANDED

No costs.

05-1238